Good morning. May it please the Court, I'm Daniel Johnson and I represent the Plaintiff Appellant, Nathan Riensche. This case requires application of a Washington State Statute, RCW 8204-500, which is plain and unambiguous. It says that the Washington business and occupation tax must be construed as a tax on the business, may not be construed as a tax on the consumer or purchaser, has to be treated as the business's overhead, just like any other overhead expense, it should be included in the price, not added to the price. May I ask you a clarifying question only on that point? Of course. Here you've got an industry where the price is regulated. So the rates can't be, can the rates be monkeyed with or not? I mean, so they really can't just up and put it in the price without making it some kind of line item. Can they? Well, I don't know. That's a fair question that I suppose was fully vetted in the case earlier, right, in the Peck case. Well, I'm not sure it was. Well, it's a... I mean, the answer is no, not preempted. Of course, that was decided in Peck. But I'm just wondering as a practical matter how that plays out from somebody who understands the industry. Well, thank you for that. I hope it's not misfounded, but I think that what we had from Peck was, you know, the rates, the question really presented there and in your question is what is rate? Because that part of what this industry does in terms of their prices is regulated, but there are a lot of things surrounding that that are not part of the rate and therefore not regulated. Now, as a practical matter, I believe that, you know, the rates, I mean, if you're talking about the rate plan, for example, Mr. Rentsch purchased a $39.95 plan which covered a certain number of minutes and then he would pay a certain rate on top of that for any minutes that exceeded the bucket, so to speak. And those rates are regulated, but certainly if singular, all of its competitors have to pay B&O taxes and only one of them ever charged as a line item a B&O tax. So all those competitors presumably either included in their rates or absorbed it just like any other business, just like my law firm does. You know, I pay B&O taxes as well. So I know I'm not quite answering your question because I'm not actually an industry expert, but I think the answer is that there are probably a lot of options. Then the answer is from your point of view that you cannot comply with the statute in this industry and put any kind of a charge of any sort on the bill. No, I don't think that's true. I think that singular could have. I think that, first of all, its competitors did comply with the statute. Well, because they didn't charge. Well, they didn't add a line item. They didn't use a line item. That's right. I guess what I'm saying, from your point of view, there is no way to comply with the statute and at the same time put a line item on there. I think that's wrong. I think that the Applewood case explains how that can be done, and the way it can be done is one of two ways has come to my mind. One, when they advertise the prices, if they wanted to, this is unrealistic, I think, but if they wanted to, they could simply say it's $39.94. In this case, I suppose they would make it $40.49, for example, and they would say approximately 50 cents of this is going toward the B&O tax, but they're including it in the price that they're posting, the $40.49. Or, and I think this is more realistic, they could charge $40.49 or whatever it is they think they need to charge, and on the bill every month where they have the monthly service charge, they could break it out there as part of that number is this 50 cents or 20 cents or whatever it is. But putting it in as a line item after the rate plan price doesn't cut it under any circumstances in your view. That's right. That's illegal. Thank you. That's right. And that's where I think that there's... Even though negotiated. Yeah, well, I mean, I think you have a car sales case where there's negotiations. We're really not talking about your case, but, I mean, my colleagues told my question. I've been involved in PUC matters a lot, and I go in and I fight for a rate, and I fight against Utah Power & Light getting anything, and Idaho Power, I'll give them some. But, I mean, the bottom line is after the rate is set, the rate is set, but there are things they can charge above that even in the rate context if, in fact, it's negotiated. Right. With the customer. I think you're right. I think the subsequent cases after Appaway have made clear that in some cases, in some contexts where there is negotiation to reach that price, then it can be added to a base price or to whatever it is that it's part of the negotiations. So the real problem is then we must disclose this, we must disclose it during the negotiation, and then if it's a part of the purchase price, having disclosed it and being a part of the negotiation, then it's okay to have the tax. I would say that's true as long as the price is something that's reached through negotiation. Well. But if the price is reached, is simply posted, taken or leave it, you can't, like Judge Reimer said, I don't think you can in any context like that, you can't. In fact, if it's a take or leave it situation, you could have left it. Your client very well could have left it and gone to somebody else. There was no question, it seems, in this particular matter, while the rate was there, there's no question that the rate plan showed there was other stuff going to be a part of the bill and that he click and click and you're a little bit out of my league on the clicking because I never use the internet to get into all this stuff. I'm kind of a dinosaur. But and then he could click on this and click on that and he could find out and it might have been a part of the bill. I guess I'm really trying to figure out, even if this is small print, boilerplate, sandwiched in the middle of a long plan, what language do I have that this doesn't submit to the disclosure requirement required? I mean, I don't find anything, any place in any language, any place or any case that suggests it. We took the 30B6 deposition of the senior tax manager for Singular and we asked him, what makes you think you can do this this way? He says, and this is at ER 76, he says, we charged it on top of the monthly plan price the same way you would be charged a sales tax, a federal excise tax at the time or any other taxes. Well, that doesn't have anything to do with it. We've talked about negotiation. We're now talking about the negotiation. Regardless of what they charge over and above, as long as it's negotiated, you've told me it's okay. No, I don't think that's right. You can't negotiate an added, something that would be added to the price, and that's what this was according to even Singular. This is an added charge, and that's where the problem is. They told your client about it. By the way, they said, if you want us, not only do you use a 3995, but we've got to tell you, there's some other charges including this. Well, first of all, And your client said, okay, I'll take it. Well, first of all, that's not true as a factual matter, and I can go through that if you'd like, because in no way, shape, or form was there an actual negotiation or disclosure that we're going to add this charge. But even accepting that there was, even if there were, that's exactly what happened at Appleway, and the company was found liable for breaching the statute, because otherwise the statute means absolutely nothing. It means you can add anything you want. It seems to me that Appleway certainly suggests that one cannot, after negotiating a price, then add this on. But Appleway doesn't say, nor any case following Appleway doesn't say, that as long as you disclose what you're adding on to the rate, and you negotiate it with someone, it's okay. I mean, that's what NET says. That's what Accord Johnson says. That's what NeverSender says. Every one of them say, you can do whatever you want to do, but the problem is it's got to be disclosed during the negotiation. If not disclosed during the negotiation, then no way. Yeah, but those words have to have some meaning. In the context of a car sale, you don't even have a price yet until you've sat down and negotiated. There is no price. So the consumer is not being led to believe that it's one price, and then being told, you're going to also pay this, our tax, our B&O tax, which is illegal. Instead, they're being told, this is the price, and this is one of the elements. It's included in the price, because they don't have a price until a negotiation takes place. The opposite occurred here. The very first thing that Mr. Rentschy did was choose which rate plan price he wanted to pay. That's the very first thing, according to Singler's own testimony. He realized and acknowledged that there would be add-ons, a whole lot of them. Sure, and those are all taxes that can be added on. This one isn't. That's the difference, and that's why this statute is unique. It comes back to Judge Smith's question then. If it were disclosed, then just because it's an add-on, does that matter? Yeah, as long as it's... In other words, you've got, in this industry, in your industry, where we've agreed you can't monkey with the rate, you're discussing and negotiating a disclosed add-on. If it were properly disclosed, would that suffice, or do you, in your view, would that still not suffice? No. Disclosure makes no difference in this case, just like it made no difference in Appaway, because the price was reached first, before any discussion or disclosure or negotiation. That's exactly what happened in Appaway. Mr. Appaway, Mr. Nelson and his wife signed a contract that said, we are charging you B&O tax of this amount. That's a lot more disclosure than Singler could ever claim to have made. So you read Appaway to say, doesn't matter whether it's disclosed, before you make the final deal, doesn't matter if it's part of the final deal, because you knew about it and it was a part of it, if you've got a rate, whether it's disclosed or not, you can have no add-on. Is that the way you read Appaway? That's right. And, you know, that's the reality of a competitive marketplace, is the way that the Appaway decision analyzed it in the context of what is really happening in the marketplace. You're really saying, as my colleague, good questioner that she is, stole my question, you're really saying in cases in front of the PUC and otherwise where you have a regulated rate, unless the PUC allows you to have the B&O tax allowed in the rate, you've got to get it from them because you can't add it on in any way in a regulated industry. I actually don't, and I try to admit to Judge Reimer as gracefully as I could, I don't really know what Singler has to do to get approval to either, you know, charge a different rate to cover the B&O tax or charge a different rate to cover the B&O tax. All I know is Washington law is very clear that this has to be treated as overhead. It's a tax on you, and you cannot pass it on as an additional charge on top of your price. This is a matter of competitive marketplace. You know, the other carriers you're charging are competing with your $39.99, and they're not adding this on, and that's what this statute prohibits. Let me ask you another question, Gosra. Why do you even have any right of action under this statute? Well, we have, you know, I said that. I mean, as I read where you have a right of action, if I have to do this, I have to determine based on the case law, one, that your client was within the class for those special benefit the statute was enacted, two, that it was legislative intent supporting creating or denying a remedy, and three, whether implying the remedy is consistent with the underlying purpose of the legislation. Now, there's nothing in this statute in my book which addresses the issue that your client should enforce this tax or enforce this action. Well, I see my time is running low, and I had intended to reserve some time for rebuttal, so I'll try to answer as quickly as possible. I mean, the first thing I would say is there are other causes of action here under the Declaratory Judgment Act and the Consumer Protection Act. Well, and if there are other causes of action, then why should you have a right of action under this statute? If you're going to go, go under CPA or unjust enrichment or let's be done. As we have, but I will point out that in the Appaway case, the Nelsons also sued under both directly as an implied right of action and as under the Declaratory Judgment Act and unjust enrichment. And the courts, both the Court of Appeals and the Supreme Court, suggested that they had a right of action as an implied right of action, particularly the Court of Appeals, because by the time they reached the Supreme Court, it was clear they had unjust enrichment, so it wasn't necessary to resolve that. I thought that, frankly, reading the case law, I thought the unjust enrichment was the only action they had. No, no. The Court of Appeals and the Supreme Court said that they would also be able to pursue an implied right of action. Now, the Supreme Court said we don't really need to decide that. That's clearly dicta. The Court of Appeals said they do. And they didn't, the singular didn't even dispute that in their answering brief. They claimed this was something they hadn't properly raised procedurally, but they did not dispute that those three elements were met in this case. Thank you. I'll try to preserve what I have left. Thank you. Good morning, Your Honors. My name is Leonard Feldman. I'm counsel for the appellee singular wireless. I think it's important to understand at the get-go what the central issue is in this case, because it seems to change at times. In the reply brief that the plaintiffs filed, they said, this case does not turn on whether singular disclosed the B&O tax surcharge, but on the fact that that state law prohibits charging it as a surcharge at all. And opposing counsel made that clear here again today. Disclosure is not an issue. There's no argument as to disclosure. In fact, there could not be an argument as to disclosure because the plaintiff testified that he didn't read any of these materials. So what we have is a pure issue of law, and that issue of law is whether under any circumstances, singular can pass on to its subscribers the B&O tax surcharge. And when you look at it through that prism, that framework, as a pure legal issue, whether it can be passed on in any circumstances, plaintiff's argument is contrary to every single case that has addressed this issue, starting, of course, with this court's opinion in Peck. What the court said in Peck, addressing this very statute, is under RCW 8204-500, businesses are allowed to itemize the B&O tax and pass the B&O tax to the consumer so long as the tax is disclosed to the consumer during the course of negotiating the purchase price. That is absolutely and fundamentally contrary to the position that this plaintiff has taken. And there's two things about Peck that deserve some attention. One is it wasn't just the holding of Peck that this disclosure was permitted. It had to reach that result because of preemption principles. We cannot have a situation under the filed tariff doctrine, the filed rate doctrine, where RCW 8204-500 is interpreted in such a way that it impacts singular rates. So we have to have an escape clause, and that escape clause, according to this court in Peck, which is federally mandated, is the disclosure escape clause. The other thing that's important to note about Peck is it didn't say that the B&O tax had to be negotiated. And, in fact, in the cases applying the B&O tax statute, it wasn't negotiated. It said it had to be disclosed during the course of negotiation. That's the distinction between the Nelson-Applewhite case on the one hand and the Johnson-NVR-Never case on the other. It's the disclosure point. What happened in Nelson was very clear from the court's holding. They negotiated a price. The purchaser there expected to pay $20,000.55. I'm making that up, but that was the number. And then when they finally got the final contract, it had sales tax, which we all expect, and the B&O tax had suddenly been thrown in. That's what the Washington legislature said cannot occur. That's what the Nelson court said cannot occur. And, frankly, that's what this court in Peck said cannot occur. But we have examples, the NVR-Never case is one of them, the Johnson case is another, where it was disclosed. In Johnson, the court said that there was no violation because the defendant disclosed the B&O charge during negotiations. Again. Actually, it was disclosed, I think, four times in Appleby, which is far more clear and far more often than any disclosure occurred here. Yeah, I read that. I read that in the Appleby case. Well, yeah. And the Supreme Court, nevertheless, said no dice. Right. But I think the way I interpret that portion of the Nelson case is that it was disclosed in the final paperwork after the price had been agreed upon. And so, again, it was a timing issue. There's nothing in the Appleby decision that says that as the parties were going through the back and forth that it was disclosed in that context. So what we have in Johnson, again, is as long as it's disclosed during the course of negotiations, it passes muster under the Washington B&O tax statute. The NVR case, you've pronounced it never. I'm not sure how to pronounce it. I don't know. I'm from Idaho, so go ahead. All right. I'll just call it never. Anyway, the never case is another very interesting case. It also involved purchasing of automobiles. In that case, it was recreational vehicles. And the seller provided the price to the buyer, and they had a contract. And all that contract said is that Western Motor Coach, the plaintiff, would be responsible for the collection and payment of all state and local taxes. That was the disclosure that occurred there. And yet, once again, the court in the NVR never case said that the B&O tax can be passed along to the consumer so long as it is properly disclosed. So there's no question, you know, we have the Nelson-Appleby case. But the Nelson-Appleby case itself has this escape valve, this disclosure issue. And what the Nelson case said is that the retailer may itemize the B&O tax if it was part of the final purchase price. And that's what all these cases talk about. There is an interim price, just as we have here. But how can it possibly be part of the purchase price when your purchase price was $39.95, and this was added on to it? Well, the $39.95 isn't the purchase price. That's the rate plan price. Oh, yeah. And so what I know, and I'm sure I think the record makes it clear that Mr. Ranchi knew, that there's going to be a zillion kind of charges added on to your phone bill. Right. All of which are fine to add on. I mean, there's no problem adding on sales tax or this fee or that fee or whatever. It just so happens that Washington legislature said you can't do that with a B&O tax. It has to be part of overhead and recovered as part of overhead costs, if at all. So I have trouble understanding how this could have been, forget negotiation even, how it could have been part of the process leading to Ranchi's decision to go with singular. Yeah, and the answer to that has to do, again, with the disclosure point, which really isn't an issue in this case. But addressing your question, during the negotiation process, Mr. Ranchi was informed and he agreed that he would pay these additional surcharges. They were not passed along. Yeah, he didn't even, none of which said B&O. I mean, on the one hand, it said taxes. On the other hand, it said gross receipts surcharge, whatever that means. And I had to actually have somebody, you know, get a magnifying glass and point me to where it said that. But all right, so it said it. But it still wasn't part of the rate. It was part of the negotiations that led to the final price. I agree with you. It was not part of the rate. It was part of the negotiations that led to the final price. That's no different than what happened in Johnson and New York. Okay, so how does that square with the Washington prohibition on adding on, recovering from the consumer explicitly as an add-on to price, that is the rate? You can't do that. Well, that's not what the statute says, Your Honor. And, in fact, you know, all of us, for example, just to give an example, have done business with contractors. Contractors add their overhead to the price that you pay. They disclose it to you. Sure. That's no different. The B&O tax is within that overhead. All that Singular has done here is it has passed on an item of overhead and it has properly disclosed it. And that's what the statute says, and that's what the intent in plain language of the statute is, is that this shouldn't come as a surprise to the consumer the way a sales tax might, that the price is negotiated and then all of a sudden you get hit with a sales tax. It has to be disclosed. Okay. All right. This is a clarifying question, too. What is the basis upon which the B&O tax is assessed? It's based on gross receipts. Is it gross receipts for a year? Yes. And so what you're purporting to pass on is sort of like a percentage of that? That's correct. Or something? And let me address that issue a little bit more globally. You said gross receipts surcharge. I'm not even sure what that is. If you were to do a Google search for gross receipts tax Washington, you would pick up immediately a Department of Revenue website that would explain to you that in Washington there's no income tax. Instead what we have at the business level is a gross receipts tax, and that is the B&O tax. So that's the manner in which it's disclosed. It is calculated on every dollar of revenue that is earned by a company. So it has the ability, unlike desks and computers, there is this ability to pass that along to a consumer commensurate to their utilization of the company's services. So, like I said, it can be calculated that way. And if you look at the testimony that plaintiff's counsel was referring to, that's all that Singular Result ever said, is that it's possible to figure out and allocate it to each subscriber, and the company has the ability to do that both under preemption principles as well as under all of these cases that we've talked about. And there are actually quite a few. I mean, I mentioned the Never case and the Johnson case. Those are in the context of the B&O tax statute. But we also have the Loudon case and the Smale case and the Robinson case, all of which deal with similar issues. It seemed to me that the – and perhaps this is form over substance, maybe not. But in those cases, you had an explicit, you know, here's how I'm arriving and how much I'm going to charge you for your car. And you know, you see them, they give you a piece of paper. And one of those line items before the total is the B&O tax. That seems quite different to me from saying, here's starting off at the bottom with the rate plan, and then saying, okay, fine, I'm going to add on to that. Yeah, that was not the case in the Never decision. In the Never decision, like I said, there was just a contract that said that the purchaser was responsible for taxes. And then when the purchaser received the invoices, the B&O tax appeared prior to the total at the bottom. The Smale case is a very good example. That was the decision that Judge Zille cited. And he pointed out, and the Smale case is very good on this, that it is not always possible, particularly in a nationwide industry, to disclose how a particular tax is calculated. Instead, it is incumbent on the consumer, if they have questions and they are shopping back and forth across different companies, to pick up the phone and call and ask what kinds of taxes or surcharges, because this is not passed on as a tax. It's passed on as an other charge. No, and there you see, you just slip back and forth between taxes and surcharges. And I mean, the problem is, there's no way to know what this is in your bill. It's a tax on the company. It's a tax on the company and a surcharge to the consumer. And it has to be disclosed under Washington law, and it was disclosed under Washington law. And your best sight, as it were, to where it was disclosed, is the statement that you may get hit with some taxes, some of which are attributable to us and some to the consumer. Right, and that's no different. Or, which I think you've now backed off of saying that's what this is. I think now your position is this is really a gross, this is a, comes under other credits or surcharges. No, what I. Or other charges, excuse me, other charges and surcharges. Well, let me start by saying I don't think I've backed off of anything. It is a tax on the company. Yes. And it is a surcharge to the consumer. But I'm calling that the disclosure. The disclosure says that the company can pass to the consumer taxes, whether they are assessed against the consumer, which would be sales tax, or against the company, which would be the B&O tax. This one. Right. Yes. And it is not passed on as a tax. That's not, now not what you say this comes under. On your bill, it comes under, what is it, gross, I'm just looking quickly and I can't find it. It comes under gross charges or something like that. Gross receipts, surcharges. Gross. It comes under other charges. It doesn't, it's not listed on the bill. It doesn't come under taxes. It comes under. It's credits, adjustments. Other charges. And other charges. Right, right. Yes, that's where it comes. Right. So the disclosure about taxes doesn't really get you terribly far. Well, the disclosure. So is there. Yes, I'm sorry. You want to know where else. It's disclosed in about five different points along the transactional corridor. It's disclosed in the terms and conditions, which, as you know, talks about network and other surcharges as well as applicable taxes and governmental fees, whether assessed directly upon you or singular. That's at ER 249. So we have both of those. We have the applicable taxes and government fees, whether assessed directly upon you or singular, as well as the network and other surcharges. Then we have in the 2004 contract the incorporation by reference of the rate plan, which specifically states that Singular imposes a gross receipt surcharge. And to somebody with RENCI's background, that can only mean one thing in Washington, and that is the B&O tax that is assessed against the company. And that, too, is part of the negotiations that preceded finalization of this transaction. Third, there's a section in Singular's e-store called understanding your bill. And that, too, discloses the gross receipt surcharge. Fourth, Singular's website includes a pop-up that explains that the gross receipt surcharge is a government tax imposed on the company's gross receipts and is not a mandated charge to the customer. Yeah, which wasn't apparently available when he signed up, but that's okay. Well, the record shows that it was available and that he could have clicked on it. He just didn't. He says it may have been available, and he might have clicked on it. Again, Your Honor, all he had to do was know what a gross receipts tax is and pick up the phone. I know, and maybe Mr. RENCI did because that's how he made his living. I wouldn't have a clue what it was. Right, and that's why. I just figure it's more like a tax or all these other zillions of things that get added on in my phone bill that I don't understand. Yeah, and I think the Smale case is very good on that. Okay. It encourages the consumer to call, and if the consumer gets erroneous information, they'll have a claim, but if they simply close their eyes, as Mr. RENCI did here, a disclosure cannot be an issue, and as I pointed out earlier, it really isn't an issue in this case. The only issue, if I could just sum up, the only issue is whether the B&O tax surcharge can be passed along under any circumstances, and clearly Washington law shows that it can. Thank you. Thank you very much. No more. Thank you. May I address the Court just for one more minute? Sure. Well, you've got 24 seconds. 24 seconds. I gave him a little extra, so. Thank you. I just wanted to point out a couple of things, unless there are other questions, that Singular admitted in the Lindsay deposition testimony of ER-76 that this is treated just like a sales tax, and if you look at the Appleway case, which is the authoritative source on what this statute means, they didn't say that all transactions in commerce involve negotiations, and so there's always an opportunity to slip it in as part of the negotiations. They said in this case, I'll quote, the process here involved the negotiation of a price, so therefore the information should have been disclosed as part of that process. This is quoting the Court of Appeals below in that case. And keep in mind that the only reason disclosures even came up in the Appleway case was because the defendant argued, if you're right and we can't add this and we can't use a surcharge to collect this, then you're telling us we can't tell consumers why the cost is what the cost is. And the Supreme Court of Washington said, no, you can tell them whatever you want. The statute doesn't require you to say anything and it doesn't prohibit you from saying anything. The point is, you've got to include it in the price that you quote them, whether it's at the end of a negotiation process or on a billboard in your window or on a website. You've got to include it in the price, don't add it to the price. And I would say that the NVER case is consistent with that because in that case it was a wholesale contract. Every month or whatever quarter that the plaintiff was buying mobile homes from the defendant, the defendant had a right to calculate the wholesale price, and that contract said we will include the B&O tax when we calculate the wholesale price. Thank you. Thank you. Case 09-35987 is submitted.
judges: Walter, Rymer, Smith N. R.